UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
:
U. S. COMMODITY FUTURES :
TRADING COMMISSION, :
 :
                                Plaintiff, :        15-CV-6140 (JPO)
 :
                   -v- :        OPINION AND ORDER
 :
GARY CREAGH and WALL STREET :
PIRATE MANAGEMENT, LLC, :
 :
                            Defendants. :
-----------------------------------------------------------X

On August 5, 2015, Plaintiff U.S. Commodity Futures Trading Commission ("Commission") filed a Complaint against Defendants Gary Creagh and Wall Street Pirate Management, LLC ("WSPM") seeking injunctive and other equitable relief and civil penalties for violations of the Commodity Exchange Act (the "Act"), 7 U.S.C. §§ 1-26, and the regulations promulgated thereunder, 17 C.F.R. §§ 1.1-190.10. (Dkt. No. 1 ("Compl.").)

On April 25, 2016, the Court entered a Consent Order for Permanent Injunction and Other Statutory and Equitable Relief Against Defendants. (Dkt. No. 39 ("Consent Order").) The Consent Order resolved and settled all liability claims against Defendants and entered a permanent injunction prohibiting them from violating the Act and regulations as charged. (Consent Order ¶¶ 47-53.) The issues of statutory relief pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1, as well as appropriate equitable relief, including injunctive relief as to registration and trading, in addition to the amount of a civil monetary penalty ("CMP") to be assessed against Defendants were reserved. (*Id.* ¶¶ 54-55.)

The Commission filed a Motion for a Supplemental Order of Permanent Injunction and Other Equitable Relief Against Defendants. (Dkt. No. 41.) For the reasons discussed below, the

motion is granted in part, with respect to the injunctive relief, and denied in part, as regards the amount of the CMP.

I. **Background**

As provided in the Consent Order, facts alleged in the Complaint and the Findings of Fact and Conclusions of Law contained in the Consent Order are deemed true for purposes of this Order and are incorporated herein by reference. (Consent Order ¶ 56.)

From December 2011 through September 2013, WSPM—by and through its managing member and sole employee, Creagh—willfully made multiple false statements to the National Futures Association ("NFA"), the self-regulatory organization for the U.S. futures industry, in statutorily required reports and during an NFA audit of WSPM in furtherance of NFA's official duties under the Act. (Compl. ¶ 1; Consent Order ¶ 47.) The NFA is a futures association registered with the Commission pursuant to Section 17 of the Act, 7 U.S.C. § 21. (Compl. ¶ 13.) Membership in the NFA is mandatory for all persons and entities conducting business with the public in the U.S. futures industry, including commodity pool operators ("CPOs"), such as WSPM, and associated persons ("APs") of CPOs, such as Creagh. (*Id.*) NFA members are subject to audits and investigations by the NFA to ensure compliance with NFA rules, the Act, and related Regulations. (*Id.*)

Creagh, individually and on behalf of WSPM, falsely represented to the NFA that the Wall Street Pirate Fund, L.P. ("WSPF" or "WSPF commodity pool"), a commodity pool operated by WSPM, was not active during calendar year 2012. (Compl. ¶ 2; Consent Order ¶¶ 31, 33, 35, 37.) Creagh knew that his statements to the NFA were false, since he had, throughout 2012, accepted funds from participants in the WSPF commodity pool and actively traded commodity futures contracts on behalf of the WSPF commodity pool, through an account

2

in the pool's name at a futures commission merchant called Interactive Brokers ("Pool Trading Account"). (Compl. ¶¶ 2, 49-50.) As the sole person authorized to trade on behalf of WSPM, and the sole person who made trades as the agent of WSPM, Creagh knew that he had personally and actively traded the Pool Trading Account on behalf of pool participants during the relevant period and thus knew that his statements to the NFA were false. (Compl. ¶ 2; Consent Order ¶¶ 19, 21, 31, 33, 35, 37.)

Additionally, throughout the relevant period, WSPM, by and through its agent Creagh, failed to maintain required books and records or to provide account statements and privacy notices to WSPF pool participants in violation of the Act and Regulations. (Compl. ¶ 4; Consent Order ¶¶ 48-50.) As such, in addition to concealing WSPF's trading activity, Creagh's false statements to the NFA concealed that WSPM had failed to maintain required books and records or to provide account statements and privacy notices to pool participants in violation of the Act and Regulations. (Compl. ¶ 5.)

## II. Discussion

The parties are largely in agreement about the nature of the relief to be entered by the Court; they disagree only about the amount of the CMP and whether the permanent injunction should include a lifetime personal trading ban for Creagh. (Dkt. No. 43 at 11.)

Regarding the personal trading ban, Creagh claims the ban is not sufficiently related to the conduct in question. (*Id.* at 10.) However, in order to obtain a permanent injunction, "the CFTC must only show that 'there is a likelihood that unless enjoined, the violations will continue.'" *CFTC v. Kelly*, 736 F. Supp. 2d 801, 804 (S.D.N.Y. 2010) (quoting *CFTC v. Am. Bd. of Trade, Inc.*, 803 F.2d 1242, 1250-51 (2d Cir. 1986)). "A district court may properly infer a likelihood of future violations from the defendant's past unlawful conduct." *Am. Bd. of Trade*,

3

803 F.2d at 1251. Courts need not enjoin only identical future violations; they may extend to restrictions on trading activity generally, if a court finds that defendants are not likely to "make good faith efforts to comply with restrictions," more broadly, in the future. *See CFTC v. Wilshire Inv. Mgmt. Corp.*, 531 F.3d 1339, 1346-47 (11th Cir. 2008); *see also, e.g.*, *CFTC v. GIGFX, LLC*, 844 F. Supp. 2d 58, 64 (D.D.C. 2012); *CFTC v. Rosenberg*, 85 F. Supp. 2d 424, 454-55 (D.N.J. 2000).

Given Creagh's repeated false statements to the NFA regarding WSPM's commodity trading activity—false statements made both in quarterly filings and during an audit (Consent Order ¶¶ 27-28)—coupled with his erroneous understanding about his legal obligations (Dkt. No. 44 ¶¶ 6-7), he presents a likelihood of violating trading regulations in the future. Accordingly, a ban on personal trading is justified.

As to the amount of the CMP, the Commission seeks $500,000, or $125,000 for each of the four counts charged in the Complaint. (Dkt. No. 42 at 7.) In determining an appropriate penalty, the Court "considers the general seriousness of the violation as well as any particular mitigating or aggravating circumstances that exist." *Wilshire Inv. Mgmt. Corp.*, 531 F.3d at 1346. The Act provides for penalties of up to $140,000 for each violation. *See* 7 U.S.C. § 13a-1(d)(1)(A); 17 C.F.R. § 143.8.

Creagh represents that he has returned all invested money to his two investors (Dkt. No. 44 ¶ 5), that he "had no intention of misleading or deceiving" (*id.* ¶ 9), and that he has "cooperated fully with the CFTC investigation, acknowledged [his] violation of the various rules and regulations involved and have attempted to resolve this matter in good faith" (*id.* ¶ 11). Moreover, all four counts in the Complaint appear to stem from Creagh's limited understanding of his legal obligations as manager of a commodity pool.

Though the Court takes seriously the gravity of Creagh's offense and the importance of maintaining the integrity of the markets through honest and complete disclosure—and accordingly imposes both injunctive and monetary relief—the Court, in exercising its discretion to impose a penalty rationally related to the offense, concludes that a penalty near the maximum allowable amount for each of Creagh's four counts would be excessive. *See R&W Technical Servs. Ltd. v. CFTC*, 205 F.3d 165, 177 (5th Cir. 2000) ("Sanctions are reviewed under the abuse of discretion standard. The standard is that the sanction must be rationally related to the offense."). Accordingly, the Court orders Defendants to pay a CMP of $125,000 in total, an amount that acknowledges the gravity of his violations but also takes into account all of the circumstances surrounding his offense.

## III. Conclusion

### A. Permanent Injunction

Based upon and in connection with the foregoing conduct, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), Creagh and WSPM are permanently restrained, enjoined, and prohibited from directly or indirectly:

    a.    Controlling or directing the trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

    b.    Soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

    c.    Applying for registration or claiming exemption from registration with the Commission in any capacity, and engaging in any activity requiring such registration or exemption from registration with the Commission, except

as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2016); and

    d.    Acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a) (2016)), agent, or any other officer or employee of any person (as that term is defined in Section 1a(38) of the Act, 7 U.S.C. § 1a(38) (2012)) registered, exempted from registration, or required to be registered with the Commission except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9) (2016).

**B.**    **Civil Monetary Penalty**

Creagh and WSPM shall pay, jointly and severally, a CMP in the amount of one hundred twenty-five thousand dollars ($125,000), plus post-judgment interest. Post-judgment interest shall accrue on the CMP beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961 (2012).

Defendants shall pay their CMP by electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank money order. If payment is to be made other than by electronic funds transfer, then the payment shall be made payable to the U.S. Commodity Futures Trading Commission and sent to the address below:

    U.S. Commodity Futures Trading Commission
    Division of Enforcement
    ATTN: Accounts Receivables
    DOT/FAA/MMAC/AMZ-341
    CFTC/CPSC/SEC
    6500 S. MacArthur Blvd.
    Oklahoma City, OK 73169
    Telephone: (405) 954-7262
    Fax: (405) 954-1620
    nikki.gibson@faa.gov

If payment by electronic funds transfer is chosen, Defendants shall contact Nikki Gibson or her successor at the address above to receive payment instructions and shall fully comply with those instructions. Defendants shall accompany payment of the CMP with a cover letter that identifies Defendants and the name and docket number of this proceeding. Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, U.S. Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, NW, Washington, D.C. 20581.

Partial Satisfaction: Acceptance by the Commission of any partial payment of Defendants' CMP shall not be deemed a waiver of their obligation to make further payments pursuant to this Order, or a waiver of the Commission's right to seek to compel payment of any remaining balance.

Change of Address/Phone: Until such time as Defendants satisfy in full their CMP as set forth in this Order, Defendants shall provide written notice to the Commission by certified mail of any change to their telephone number or mailing address within ten (10) calendar days of the change.

### C. Consent Order

This Order supplements the Consent Order and the Consent Order remains in full force and effect.

In light of the foregoing, the Commission's Motion for Permanent Injunction and Other Statutory and Equitable Relief is GRANTED IN PART, with respect to the injunctive relief sought, and DENIED IN PART, insofar as Defendants shall pay a CMP of $125,000.

The Clerk of Court is directed to close the motion at Docket Number 41.

SO ORDERED.

Dated: May 10, 2017
       New York, New York

                                          J. PAUL OETKEN
                                      United States District Judge